1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Marcus Powell,                              No. CV-17-02445-PHX-BSB

10                  Plaintiff,                    Consolidated with

11   v.                                          No. CV-17-02647-PHX-BSB

12   Freedom Financial Network, et al.,          **ORDER**

13                  Defendants.

14

15          This matter is before the Court on Plaintiff's third and fourth motions seeking

16   leave to file a third amended complaint in these consolidated cases.  (Docs. 69, 92.)[1]

17   Plaintiff has captioned these motions as "Plaintiff's Second Renewed Motion for Leave

18   to Amend Plaintiff's Second Amended Complaint" (Doc. 69), and "Motion for Leave to

19   Amend Complaint."  (Doc. 92.)  In both motions, Plaintiff seeks leave to amend the

20   operative complaint, the Second Amended Complaint filed in Case No. CV 17-02647-

21   PHX-BSB.  (CV 17-02647 Doc. 26; Docs. 57, 58, 59.)  The Court denied without

22   prejudice Plaintiff's first motion seeking leave to file a third amended complaint because

23   he failed to comply with Local Rule 15.1.  (CV 17-02647 Doc. 46; Doc. 62, *amended by*

24   Doc. 63.)  The Court denied without prejudice Plaintiff's second motion seeking leave to

25   file a third amended complaint for again failing to comply with Local Rule 15.1 and this

26   _____

27          [1] References to "CV 17-02647 Doc." are to documents filed in Case No. CV 17-
     02647-PHX-BSB.  References to "Doc." are to documents filed in Case No. CV 17-
28   02445-PHX-BSB.  The Court designated Case No. CV 17-02445-PHX-BSB as the lead
     case.  (CV 17-02647 Doc. 42.)

Court's order. (Docs. 66, 67, 68.) As set forth below, the Court denies Plaintiff's third and fourth motions seeking leave to file a third amended complaint for failure to comply with Local Rule 15.1 and this Court's orders, and because the proposed amendments would be futile.

## I. Procedural Background

In these consolidated cases, Plaintiff asserts claims for disability discrimination under the Americans with Disabilities Act of 1990 (ADA). Plaintiff commenced these consolidated cases on July 21, 2017 by filing his Complaint in Case No. CV 17-02445. (Doc. 1.) Approximately one week later, on July 28, 2017, Plaintiff filed an Amended Complaint. (Doc. 8.) The Court screened the Amended Complaint, identified the deficiencies of the Amended Complaint, and dismissed it with permission for Plaintiff to file a Second Amended Complaint that cured the deficiencies identified in the Court's order. (Doc. 11.) Plaintiff filed a Second Amended Complaint on August 23, 2017. (Doc. 14.)

On July 14, 2017 and July 17, 2017, Plaintiff also filed a complaint and amended complaint in Maricopa County Superior Court. (CV 17-02647 Doc. 1 at 2.) These complaints asserted claims against the same Defendants that Plaintiff had sued in federal court in Case No. CV 17-02445. On August 7, 2017, Defendants removed Plaintiff's amended complaint filed in Maricopa County Superior Court to this Court. (CV 17-02647 Doc. 1, Ex. A.) On August 14, 2017, Defendants filed a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. (CV 17-02647 Doc. 8.) On September 27, 2017, Plaintiff filed a response to Defendants' motion for a more definite statement and filed a Second Amended Complaint. (CV 17-02647 Docs. 25, 26.) The Court ordered the cases consolidated on November 1, 2017, with Case No. CV 17-02445 designated as the lead case. (CV 17-02647 Doc. 42.) The Court denied as moot Defendants' motion for a more definite statement because Plaintiff had filed a Second Amended Complaint. (CV 17-02647 Doc. 44.)

Therefore, by the time the Court ordered the cases consolidated on November 1, 2017, Plaintiff had filed six complaints (a complaint, amended complaint, and second amended complaint in each of the two cases). Meanwhile, on October 11, 2017, Defendants filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). (CV 17-02647 Doc. 33.) On October 31, 2017, Plaintiff filed a response to Defendants' motion to dismiss. (CV 17-02647 Doc. 43.) After the Court ordered the cases consolidated on November 1, 2017 and designated Case No. CV 17-02445 as the lead case, Defendants filed a reply in support of their motion to dismiss, in the lead case, on November 7, 2017. (Doc. 38.)

While Defendants' motion to dismiss was pending, the Court held a Case Management Conference on December 14, 2017, and entered a Case Management Order that set June 22, 2018 as the discovery deadline and July 27, 2018 as the dispositive motions deadline. (Docs. 49, 50.) On December 22, 2017, the Court entered an order explaining that after consolidation there were two separate Second Amended Complaints, filed in each of the two consolidated cases, which the Court considered as operative complaints. (Doc. 53 at 3.) The Court stated that Defendants had filed a motion to dismiss the Second Amended Complaint in Case No. CV 17-02467, but had not filed a notice asking the Court to apply the motion to dismiss to the Second Amended Complaint in Case No. CV 17-02445 and had not filed a separate motion to dismiss directed at the Second Amended Complaint in Case No. CV 17-02445. (*Id*.) Therefore, the Court directed Defendants to either file a separate motion to dismiss in Case No. CV-02445, or file a notice asking the court to apply the motion to dismiss filed in Case No. CV 17-02647 to the Second Amended Complaint filed in Case No. CV 17-02445. (*Id*. at 4.)

On January 2, 2018, Defendants filed a notice asking the Court to apply the motion to dismiss filed in Case No. CV 17-02467 to the Second Amended Complaint in Case No. CV 17-02445. (Doc. 56.) Defendants alternatively asked the Court to dismiss the Second Amended Complaint in Case No. CV 17-02445, and consider the Second Amended Complaint in Case No. CV 17-02647 as the operative complaint. (Doc. 56 at

1, n.1) Defendants made this request based on a December 20, 2017 email from Plaintiff. (*Id*.) On January 3, 2018, the Court entered an order declining to take action based on an email and stating that if Plaintiff wished to voluntarily dismiss the Second Amended Complaint filed in Case No. CV. 17-02445, then he must file a proper notice with the Court. (Doc. 57 at 2.) To clarify the status of the case, the Court directed Plaintiff to either file a notice voluntarily dismissing the Second Amended Complaint filed in Case No. CV 17-02445, or file a notice stating that he wished to proceed on the Second Amended Complaints filed in both cases. (*Id*.) The Court explained that if Plaintiff filed a notice to voluntarily dismiss the Second Amended Complaint filed in Case No. CV 17-02445, then the Court would consider the Second Amended Complaint filed in Case No. CV 17-02467 as the operative complaint and apply Defendants' motion to dismiss to that complaint. (*Id*.) The Court further explained that if Plaintiff filed a notice stating that he wished to proceed under both complaints, then the Court would apply Defendants' motion to dismiss to both complaints. (*Id*.)

On January 5, 2018, Plaintiff responded to the Court's order and asked the Court to dismiss the Second Amended Complaint filed in Case No. CV 17-02445 and consider the Second Amended Complaint filed in Case No. CV 17-02647 as the operative complaint. (Doc. 58.) On January 8, 2018, the Court granted Plaintiff's request to dismiss the Second Amended Complaint filed in Case No. CV 17-02445 and ordered that the Second Amended Complaint filed in Case No. CV 17-02467 would be the only operative complaint in the consolidated cases. (Doc. 59.)

By this point in the proceedings, Plaintiff had filed six different complaints (Docs. 1, 8, 14; CV 17-02467 Docs. 1, 26), and had the opportunity to cure deficiencies in an amended complaint identified in a court order (Doc. 11), and to address deficiencies in an amended complaint in response to Defendants' motion for more definite statement. (CV 17-02647 Doc. 8.) Plaintiff also had the opportunity to designate the operative complaint or complaints for the consolidated cases. (Docs. 57, 58, 59.)

Nonetheless, on January 16, 2018, shortly after designating the Second Amended Complaint filed in Case No. CV 17-02647 as the operative complaint, Plaintiff filed a motion seeking leave to amend that complaint and file a third amended complaint. (CV 17-02647 Doc. 46.) On January 18, 2018, the Court denied the motion without prejudice because Plaintiff failed to comply with LRCiv 15.1. (Doc. 62, *amended by* Doc. 63.) On January 29, 2018, Plaintiff filed a second motion to amend the Second Amended Complaint and file a third amended complaint. (Doc. 66.) The proposed third amended complaint lodged with Plaintiff's second motion to amend was not the same as the proposed third amended complaint lodged with his first motion to amend. (*Compare* CV 17-02647 Doc. 46 at 6-20, *with* Doc. 67.) On February 1, 2018, the Court denied without prejudice Plaintiff's second motion to amend because Plaintiff failed to comply with LRCiv 15.1 and this Court's order. (Doc. 68.) On January 30, 2018, the Court entered an order granting in part and denying in part Defendants' motion to dismiss for failure to state a claim. (Doc. 65.)

Plaintiff has filed six different complaints and has proposed two additional different complaints. On February 8, 2018, Plaintiff filed the pending "Second Renewed Motion for Leave to Amend Plaintiff's Second Amended Complaint," with a proposed third amended complaint, which the Court identifies as Plaintiff's third motion to amend. (Doc. 69.) If the Court granted Plaintiff's third motion to amend, the proposed third amended complaint would be the seventh complaint filed in these consolidated cases and the ninth complaint that Plaintiff has proposed. On February 22, 2018, Defendant FFN filed a response in opposition to Plaintiff's third motion to amend. (Doc. 78.) Plaintiff has not filed a reply and the time to do so has passed. On March 19, 2018, Plaintiff filed his fourth motion to amend the Second Amended Complaint, but did not include a proposed amended complaint. (Doc. 92.)

## II. Amended Pleadings

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its complaint once as a matter of course" within certain time periods. Fed. R. Civ. P.

15(a)(1). After those time periods, "a party may amend its pleading only with the opposing party's consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained that it has "stressed Rule 15's policy of favoring amendments, and . . . applied this policy with liberality." *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citations omitted). However, the court further explained that "the liberality in granting leave to amend is subject to several limitations." *Id.* Therefore, a district court may deny leave to amend when "the amendment of the complaint would cause the opposing party undue prejudice," leave to amend is "sought in bad faith," granting leave to amend would "constitute an exercise in futility," or granting leave to amend would "create[] undue delay." *Id.* (citing *Foman v. Davis*, 471 U.S. 178, 182 (1962).)

In addition, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props.*, 866 F. 2d at 1160 (citations omitted); *see also Mayfield v. Doe*, 2017 WL 3168492, at *2 (D. N.M June 5, 2017) ("a plaintiff may not seek to amend a complaint in a manner that turns the complaint into a 'moving target.' . . . There comes a point when even a *pro se* plaintiff has had sufficient time to investigate and to properly frame his claims against specific defendants.").

The Ninth Circuit has distilled these considerations into the following five factors to determine whether leave to amend should be granted: "(1) bad faith, (2) undue delay, (3) prejudice to opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended its complaint." *Ascon Props.*, 866 F. 2d at 1160. "However, each [of these factors] is not given equal weight. Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see also Saul v. United States,* 928 F.2d 829, 843 (9th Cir. 1991) (district courts properly deny leave to amend when the proposed amendment would be futile or subject to dismissal). Furthermore, "it is the consideration of prejudice to the opposing party that

carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citations omitted).

In his pending third motion to amend, Plaintiff acknowledges that the Court must consider these factors when deciding whether to grant leave to file an amended complaint. (Doc. 69 at 4.) However, he argues that *pro se* litigants are entitled to notice of a complaint's deficiencies and an opportunity to be heard prior to dismissal of their case. (*Id*. at 5.) To the extent Plaintiff is arguing that he has not been provided opportunities to cure deficiencies in his several complaints, the Court rejects that argument based on the procedural history of this matter, as set forth above in Section I. In Case No. CV 17-02445, the Court screened Plaintiff's amended complaint, identified the deficiencies of the amended complaint, and dismissed it with permission for Plaintiff to file a second amended complaint that cured the deficiencies identified in the Court's order. (Doc. 11.) In response to the Court's screening order, Plaintiff filed a second amended complaint. (Doc. 14.)

In Case No. CV 17-02647, Plaintiff filed several complaints, including the operative Second Amended Complaint, which he filed in response to a motion for a more definite statement. (CV 17-02647 Docs. 8, 25, 26.) Plaintiff has been given the opportunity to designate the operative complaint or complaints in these consolidated cases. (Docs. 57, 58, 59.) In addition, Plaintiff had another opportunity to explain his claims in his response to Defendants' motion to dismiss. (CV 17-02647 Doc. 43.) Therefore, Plaintiff has been provided notice and multiple opportunities to cure deficiencies in his complaints.

The cases Plaintiff cites in his third motion to amend are inapposite and do not address circumstances in which a plaintiff has been provided notice and opportunity to cure deficiencies in his complaints, has filed multiple complaints, and seeks leave to file an additional amended complaint. (*See* Doc. 69 at 5 (citing *Flowers v. First Hawaiian Bank*, 295 F.3d 996, 976 (9th Cir. 2002) (reversing the district court's denial of plaintiff's motion to amend because amendment was not futile); *Waters v. Young*, 100 F.3d 1437,

1441 (9th Cir. 1996) (reversing entry of judgment as a matter of law during trial, under Rule 50, because the district court did not provide notice of the deficiencies of the non-moving party's proof and an opportunity to cure during the trial); *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1195) (reversing dismissal of *in forma pauperis* complaint because district court screened the complaint under 28 U.S.C. § 1915(d) and dismissed it without allowing plaintiff an opportunity to cure deficiencies); *Lucas v. Dept. of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (the court converted a motion to dismiss into motion for summary judgment by considering matters outside the pleadings, but erred by not providing notice to plaintiff or an opportunity to respond to the additional materials).) Therefore, the Court considers Plaintiff's third motion to amend under the five factors that the Ninth Circuit has articulated.

## III. Plaintiff's Proposed Third Amended Complaint

### A. Failure to Comply with Local Rule 15.1

As an initial matter, Defendant argues that the Court should deny Plaintiff's third motion to amend because Plaintiff again failed to comply with Local Rule 15.1. (Doc. 78 at 2.) Defendant states that the proposed third amended complaint submitted with Plaintiff's motion to amend does not accurately and completely indicate the proposed changes to the Second Amended Complaint. (*Id*.) The Court has compared the Second Amended Complaint and the proposed third amended complaint and agrees with Defendant that the proposed third amended complaint does not indicate all additions and deletions from the Second Amended Complaint. The Court has spent a considerable amount of time reviewing the documents to identify the proposed revisions. The Court could deny Plaintiff's third motion to amend for failing to comply with Local Rule 15.1, particularly as the Court has advised Plaintiff about the requirements of this rule in two prior orders (Doc. 62, *amended by* Doc. 63; Doc. 68), but will nonetheless consider the merits of Plaintiff's motion to amend.

### B. Restating Dismissed Claims

In the proposed third amended complaint submitted with Plaintiff's third motion to

amend, Plaintiff reasserts claims that he asserted in the Second Amended Complaint and that this Court dismissed. (*Compare* CV 17-02647 Doc. 26 *with* Doc. 69, Ex. A; *see also* Doc. 65.) Specifically, Plaintiff seeks to reassert dismissed claims for failure to provide reasonable accommodations (Count One in the Second Amended Complaint, Count Two in the proposed third amended complaint), retaliation (Count Two in the Second Amended Complaint, Count Five in the proposed third amended complaint), work place harassment/conspiracy (Count Four in the Second Amended Complaint, Count Seven in the proposed third amended complaint), and intentional infliction of emotional distress (Count Six in the Second Amended Complaint, Count Nine in the proposed third amended complaint). As set forth below, Plaintiff has not provided any new facts to support these claims and therefore he has not cured the deficiencies identified in the Court's order dismissing these claims. (*See* Doc. 65.) Therefore, if allowed, these restated claims would be subject to dismissal for failure to state a claim, and amending the Second Amended Complaint to reassert these claims would be futile.

### 1.    Reasonable Accommodation

In Count One of the Second Amended Complaint and in Count Two of the proposed third amended complaint, Plaintiff asserts a claim for failure to provide reasonable accommodation. (CV 17-02647 Doc. 26 at 10; Doc. 69, Ex. A at ¶¶ 82-87.) In its order on Defendants' motion to dismiss, the Court dismissed Plaintiff's reasonable accommodation claim because he did not allege any facts to support a claim that he had requested a reasonable accommodation or that Defendant FFN failed to provide reasonable accommodation. (Doc. 65 at 9-11.)

In the proposed third amended complaint, Plaintiff again fails to allege any facts to support a claim that he requested a reasonable accommodation or that Defendant FFN failed to provide a reasonable accommodation. (Doc. 69, Ex. A at ¶¶ 82-87.) Instead, Plaintiff proposes to amend this count in the Second Amended Complaint by adding details to his allegations in paragraphs 77 and 78. He does not propose any changes to the other allegations in this count. In the Second Amended Complaint, at paragraph 77,

he alleged he had a disability. (CV 17-02647 at 10, ¶ 77.) In the proposed third amended complaint, at paragraph 84, he expands his earlier allegation to state that he "suffered panic attacks and anxiety," which he asserts is a disability. (Doc. 69, Ex. A at ¶ 84.)

In the Second Amended Complaint, at paragraph 78, he alleged that FFN had knowledge of his disability and failed to provide reasonable accommodations by failing to resolve computer issues. (CV 17-02647 at 10, ¶ 78.) In the proposed third amended complaint, at paragraphs 85 and 86, he alleges that a specific FFN employee, Durkin, had knowledge of his disability because he had a panic attack and cried while meeting with her, and he alleges that Defendant failed to provide reasonable accommodations by refusing his scheduling requests, taking leads from his queue, failing to remedy computer issues, and using derogatory statements. (Doc. 69, Ex. A at ¶¶ 85, 86.)

Plaintiff's proposed expanded allegations, even if allowed, would not substantively amend the Second Amended Complaint. These proposed allegations include additional details about the nature of Plaintiff's alleged disability and how Defendant knew of his disability, and expand his allegations that Defendant discriminated against him through acts of sabotage. These proposed allegations, if allowed, would not establish a plausible failure to accommodate claim. Plaintiff's proposed third amended complaint does not allege any facts to support a claim that he requested reasonable accommodation or that Defendant FFN failed to provide reasonable accommodation. (Doc. 65 at 11.) Therefore, it would be futile for the Court to allow this proposed amendment.

## 2. Retaliation

In Count Two of the Second Amended Complaint and in Count Five of the proposed third amended complaint, Plaintiff asserts a claim for retaliation. (CV 17-02647 Doc. 26 at 11; Doc. 69, Ex. A at ¶¶ 102-06.) [2] In the order on the motion to

---

[2] The paragraph numbering in the Second Amended Complaint is out of order and, therefore, the Court cites to the relevant page numbers in that complaint. In Count Two, at page 11, Plaintiff numbered the paragraphs in the following sequence: 80, 79, 80, 81, and 82. (CV 17-02647 Doc. 26 at 11.) The only paragraph that Plaintiff proposes to substantively amend is the second paragraph 80, which is the third paragraph of that

dismiss, the Court dismissed Plaintiff's retaliation claim because he did not allege facts to establish that he engaged in protected activity and that Defendant retaliated against him for engaging in protected activity. (Doc. 65 at 11-13.) The order specifically noted that Defendant's alleged conduct, which Plaintiff asserted was retaliation, occurred before Plaintiff engaged in protected activity by filing a complaint with the EEOC in February 2017. (*Id.* at 13.) Plaintiff identified those alleged retaliatory acts as violations of HIPAA laws, unfair write-ups, and acts of sabotage to his computer. (CV 17-02647 Doc. 26 at 11, ¶ 80.)

In the proposed third amended complaint Plaintiff proposes to amend this count to allege that Defendant retaliated against him after he filed his first EEOC complaint on February 21, 2017 by refusing his scheduling requests, taking leads from his queue, failing to remedy computer issues, and using derogatory statements.[3] (Doc. 69, Ex. A at ¶ 104.) However, a review of the proposed third amended complaint shows that all of these alleged actions occurred *before* Plaintiff filed his EEOC complaint on February 21, 2017, except his allegations that Defendant refused his scheduling requests. (Doc. 69, Ex. A at ¶¶ 73, 75.) In these proposed allegations, Plaintiff asserts that a schedule approver denied an unspecified number of schedule requests as "persistent," and that his request for leave on July 3, 2017 was denied and he needed leave that day because his children's day care was closed. (*Id.*)

These proposed allegations that Defendant denied an unspecified number of Plaintiff's leave requests do not establish that Plaintiff suffered an adverse employment action.[4] The Ninth Circuit has adopted the Title VII framework for ADA retaliation

---

count. If Plaintiff had listed the paragraphs in Count Two in proper numerical order (e.g., 80, 81, 82, 83, and 84), the paragraph at issue would be paragraph 82.

[3] Paragraph 104 of the proposed third amended complaint does not identify the date that Plaintiff filed his first EEOC complaint, but earlier in the proposed complaint, at paragraph 30, Plaintiff alleges that he filed his first EEOC complaint on February 21, 2017. (Doc. 69, Ex. A at ¶ 30.)

[4] An ADA retaliation claim requires an employee to show that (1) he engaged in protected activity, (2) suffered an adverse employment action, and (3) there was a causal link between the two. *Brown v. City of Tucson,* 336 F.3d 1181, 1186-87 (9th Cir. 2003).

claims. *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc) (adopting test and stating elements), *vacated on other grounds*, 535 U.S. 391 (2002). The Supreme Court has explained that the antiretaliation provision of Title VII does not protect an individual from all retaliation, "but from retaliation that causes harm." *Burlington N. and Santa Fe Ry. Co v. White*, 548 U.S. 53, 67 (2006). Therefore, a plaintiff must show that a reasonable employee would have found the challenged action, or the alleged retaliation, materially adverse. *Id*. at 68. This means that the challenged action might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id*. (citations omitted).

In this case, Plaintiff's allegations in the proposed third amended complaint that he was denied leave do not establish that he suffered an adverse employment action. *See Bowles v. New York City Transit Authority*, 2006 WL 1418602, *12 n.26 (S.D.N.Y. May 23, 2006) (denial of a single day of leave is not an adverse employment action); *Cabral v. Philadelphia Coca Cola Bottling Co.*, 2003 WL 1421297, *7 (E.D. Pa. Mar. 18, 2003) (denial of leave on specific dates was not an adverse employment action); *Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) (denial of vacation is not sufficiently materially adverse to constitute adverse employment action); *Paniagua v. Texas Dept. of Criminal Justice*, 2001 WL 540908, *6 (N.D. Tex. May 18, 2001) (stating that employers routinely restrict the timing of employees' vacations based on the needs of the business and concluding that denial of employee's vacation request does not constitute an adverse employment action). The denial of an unspecified number of leave requests is not material and would not dissuade a reasonable worker from engaging in protected activity. Therefore, allowing Plaintiff to amend his complaint to assert a retaliation claim based on these allegations would be futile.

Furthermore, as noted in the order on the motion to dismiss, ADA retaliation claims "are redressable only by equitable relief," and compensatory and punitive damages are not available for these claims. (Doc. 65 at 13 n.11); *Alvarado v. Cajun*

*Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding that ADA retaliation claims are limited to equitable relief). The proposed third amended complaint, like the Second Amended Complaint, seeks only monetary relief. (Doc. 69, Ex. A at Prayer for Relief). Therefore, allowing Plaintiff to amend his complaint to assert an ADA retaliation claim that seeks only monetary relief would be futile.

### 3. Work Place Harassment/Conspiracy

In Count Four of the Second Amended Complaint, and Count Seven of the proposed third amended complaint, Plaintiff asserts a claim for work place harassment/conspiracy. (CV 17-02647 Doc. 26 at 12; Doc. 69, Ex. A at ¶¶ 111-13.) In the Second Amended Complaint and in the proposed third amended complaint, Plaintiff alleges, with minor differences in the wording of the allegations, that Defendant FFN and the individual Defendants, who he also identifies as FFN employees, intentionally harassed him and created a hostile work environment that forced Plaintiff to resign. *Id.*

As set forth in the Court's order on the motion to dismiss, the Ninth Circuit has not recognized a claim for disability harassment under the ADA. (Doc. 65 at 15-16); *Brown*, 336 F. 3d at 1190 n.14 ("Our court has not yet held that a [disability harassment] claim exists, let alone what its source in the statute might be. We decline to do so here."); *see also Garcia v. Qwest Corp.*, 2008 WL 5114317, *13 (D. Ariz. Dec. 4, 2008) (noting that the Ninth Circuit has not recognized a claim for disability harassment). Furthermore, the Ninth Circuit has recognized that the ADA does not permit claims against individual employees. *Walsh v. Nevada Dept. of Human Res.*, 471 F.3d 1033, 1037-38 (9th Cir. 2006). Therefore, it would be futile to allow Plaintiff to file an amended complaint to assert a claim for work place harassment and claims against the individual Defendants.

### 4. Intentional Infliction of Emotional Distress

In Count Six of the Second Amended Complaint, and Count Nine of the proposed third amended complaint, Plaintiff alleges a claim for intentional infliction of emotional distress. (CV 17-02647 Doc. 26 at 13; Doc. 69, Ex. A at ¶¶ 119-21.) In the Second

Amended Complaint and the proposed third amended complaint, Plaintiff alleges that Defendant engaged in retaliatory actions against him based on his disability, that these actions were extreme and outrageous, and were intended to force him to resign. (*Id.*) The allegations in the Second Amended Complaint and the proposed third amended complaint are the same, with very minor changes in wording that do not substantively change Plaintiff's allegations. As set forth in the Court's order on the motion to dismiss, Plaintiff's allegations do not support a claim for intentional infliction of emotional distress. (Doc. 65 at 18-23.) Therefore, it would be futile to allow Plaintiff to file a third amended complaint that reasserts his previously dismissed claim for intentional infliction of emotional distress.

### C.    Proposed New Claims

Plaintiff also seeks leave to include three new claims in his proposed third amended complaint, specifically a claim for privacy violation (Count One) perceived disability discrimination (Count Three) and negligence (Count Four). (Doc. 69, Ex. A at ¶¶ 78-81; 88-93, 94-101.) Because each of these proposed claims fails as a matter of law and, thus, would be subject to dismissal under Rule 12(b)(6), it would be futile to allow Plaintiff to file a third amended complaint asserting these claims.

#### 1.    Privacy Violation

In Count One of the proposed third amended complaint, Plaintiff alleges that Defendant FFN violated his privacy when FFN employees Carr and Durkin disclosed Plaintiff's medical information to other FFN employees. (*Id.* at ¶¶ 79, 80.) Plaintiff does not identify the legal basis for this claim. However, in the Second Amended Complaint, Plaintiff asserted very similar allegations under the heading "FNN [sic] HIPPA [sic] Violations." (CV 17-02647 Doc. 26 at 9.) Therefore, it appears that Plaintiff may be asserting a claim for unauthorized disclosure of his medical information under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

However, there is no private right of action for an alleged HIPAA violation. *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself

provides no private right of action."); *Espinoza v. Gold Cross Servs., Inc.*, 234 P.2d 156, 158 (Utah Ct. App. 2010) ("HIPAA does not create a private right of action; '[u]nder HIPAA, individuals do not have a right to court action.'") (quoting Compliance and Enforcement, 65 Fed. Reg. 82,600, 82,601 (Dec. 28, 2000).) Thus, to the extent Plaintiff is seeking leave to assert a claim for a violation of HIPAA, that claim would be subject to dismissal and therefore it would be futile to allow Plaintiff to amend his complaint to assert this claim.

Plaintiff may also be attempting to assert a claim for improper disclosure of confidential medical information under the ADA. As an initial matter, Plaintiff does not allege that he presented a claim for improper disclosure of medical information to the EEOC and thus exhausted administrative remedies. *See EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir. 1994) ("To establish federal subject matter jurisdiction, [a plaintiff] is required to exhaust [his] administrative remedies before seeking federal adjudication of [his] claims."); *Sommatino v. United States*, 255 F.3d 704, 709 (9th Cir. 2001) ("substantial compliance with the presentment of a discrimination complaint to an appropriate administrative agency is a jurisdiction prerequisite.") Instead, in the proposed third amended complaint, Plaintiff alleges that he filed complaints with the EEOC alleging "blatant discrimination," retaliation and harassment, and constructive discharge. (Doc. 69 at ¶¶ 30-32.)

Nonetheless, even if the Court assumes that Plaintiff has administratively exhausted a claim for improper disclosure of confidential medical information, Plaintiff does not refer to any provision in the ADA in his proposed claim for a privacy violation. "The Ninth Circuit has not addressed the elements of an improper disclosure of medical records claim under the ADA . . . , but the courts that have require plaintiffs to establish that 'the disclosed information was confidential and that he suffered some kind of tangible injury as a result of the disclosure.'" *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1065-66 (N.D. Cal. 2017) (quoting *McPherson v. O'Reilly Auto., Inc*., 491 F.3d 726, 732 (8th Cir. 2007), and citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 970

(8th Cir. 1999).)  Thus, for the first element, Plaintiff must allege that the information Defendants' employees disclosed to other employees is "the type of confidential information that falls within the law's protective reach," such as information obtained through a disability-related inquiry or an employer-conducted medical examination under 42 U.S.C. § 12112(d).[5]  *See McCarthy*, 230 F. Supp. 3d 1066 (citations omitted).  For the second element, Plaintiff must allege that he suffered a tangible injury as a result of the disclosure.  *Id.*

In the proposed third amended complaint, Plaintiff alleges that he disclosed to his Team Leader Carr that he had chronic pain and was seeking treatment from a pain management specialist.  (Doc. 69, Ex. A at ¶ 40.)  He also alleges that he told Human Resources Specialist Durkin that he suffered from anxiety and panic attacks.  (*Id*. at ¶ 43.)  In Count One of the proposed third amended complaint, Plaintiff alleges that Carr and Durkin disclosed this information to other FFN employees.  (*Id*. at ¶¶ 79-80.)  In other allegations, Plaintiff asserts that he "disclosed" his disability of anxiety to Durkin and that he "disclosed" his use of pain medications to Carr.  (*Id*. at ¶¶ 85, 90.)

Thus, Plaintiff alleges that Defendant disclosed information that he voluntarily disclosed to Carr and Durkin, and he does not allege that Defendant disclosed confidential information obtained through an authorized medical examination or inquiry, in violation of 42 U.S.C. § 12112(d)(3)(C), (d)(4)(C).  *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1046-47 (10th Cir. 2011) ("On its face, § 102(d) does not apply to or protect information that is *voluntarily* disclosed by an employee unless it is elicited during an authorized employment-related medical examination or inquiry.") (citations omitted).  "[I]f an employer discloses medical information that was voluntarily offered by an employee—outside the context of an authorized employment-related medical examination or inquiry—then the employer is not subject to liability under § 102(d)."  *Id*.; *see also Cash v Smith*, 231 F.3d 1301, 1303, 1307 (11th Cir. 2000) (employee's

---

[5]  These claims are also referred to in the case law as Section 102(d) claims, based on the United States Public Laws citation to the Americans with Disabilities Act of 1990. PL 101-336 (S. 933).

voluntary disclosure of medical information to supervisor, even "in confidence," was not protected under § 102(d) and supervisor's disclosure of that information to other employees did not violate the ADA). Therefore, Plaintiff's allegation of a privacy violation in the proposed third amended complaint, which is based on his voluntary disclosures of his medical information to FFN employees, does not adequately allege the first element, which is that the information disclosed is the type of information protected by the ADA.

Plaintiff also fails to adequately allege the second element of an impermissible disclosure claim, that he suffered a tangible injury as a result of the disclosure. As the court explained in *McCarthy*, even if Defendant improperly disclosed Plaintiff's medical information, "no injury flows from improper disclosure where the plaintiff had already disclosed the same information." *McCarthy*, 230 F. Supp. 3d at 1067. Therefore, even if Plaintiff alleged that Defendant FFN disclosed confidential medical information protected by the ADA, he would not be able to establish that he suffered a tangible injury from the improper disclosure because he alleges that he voluntarily disclosed that information. Therefore, to the extent Plaintiff is attempting to allege a claim for improper disclosure of medical information under the ADA, that claim would fail and be subject to dismissal. Therefore, it would be futile to allow Plaintiff to amend his complaint to assert a privacy violation claim under the ADA.

Finally, Plaintiff may be attempting to assert a claim for emotional distress for a negligent violation of his privacy under state law. However, in his third motion to amend, Plaintiff asserts that he has filed a workers' compensation claim for emotional distress against FFN. (Doc. 69 at 5.) Under Arizona law, unless specifically rejected, a workers' compensation claim is the exclusive remedy for an employee to recover damages resulting from his alleged employer's negligence. *See Wagner v State,* 393 P.3d 156, 158 (Ariz. Ct. App. 2017) (citing Ariz. Rev. Stat. § 23-1022A; *Anderson v. Indus. Comm'n*, 711 P.2d 595 (1985)); *see also Lee v. M and H Enters., Inc.*, 347 P.3d 1153, 1161 (Ariz. Ct. App. 2015) ("an employee seeking compensation for an injury must

choose between pursuing a statutory claim with the Industrial Commission and filing a common law tort action.").  Therefore, to the extent Plaintiff seeks to assert a claim for negligent infliction of emotional distress based on a violation of his privacy, that claim would be barred under Arizona law.  Therefore, it would be futile to allow Plaintiff to amend his complaint to assert a state law negligence claim based on an alleged violation of his privacy.

## 2.    Perceived Disability Discrimination

In Count Three of the proposed third amended complaint, Plaintiff asserts a claim that he labels as "perceived disability discrimination."  (Doc. 69, Ex. A at ¶¶ 88-93.)  In this proposed claim, Plaintiff alleges that he had a disability, and that he disclosed to FFN employees Carr and Durkin that he was taking pain medications and that he suffered from anxiety.  (*Id*. ¶¶ at 89-90.)  Plaintiff further alleges that "[t]hereafter, FFN perceived Plaintiff's disability would substantially limit him from performing by refusing his scheduling requests, taking leads from his que [sic], failing to remedy the computer issues, using derogatory statements all of which were adverse employment actions to force him to resign and constructive discharge which ultimately lead Plaintiff's constructive discharge in violation of 42 U.S.C. § 12112(b)(5)(a)."  (*Id*. at ¶ 91.)

These allegations appear to assert that Plaintiff disclosed his disability to Defendant's employees, Defendant perceived that Plaintiff's disability would substantially limit his ability to perform his work and, therefore, subjected him to adverse employment actions in an effort to force Plaintiff to resign.  Thus, it appears that Plaintiff is asserting a claim for disparate treatment based on his disability, or in other words, that Defendant discriminated against Plaintiff because of his disability and Defendant's perception that this disability would limit Plaintiff's ability to perform his job.

As Defendant correctly notes, this claim is duplicative to Plaintiff's disparate treatment claim in Count Three of the Second Amended Complaint, which survived Defendant's motion to dismiss.  (CV 17-02647 Doc. 26 at 11-12; Doc. 65 at 24.)  In his proposed "perceived disability" claim, Plaintiff again asserts a claim for disability

discrimination through disparate treatment. In Count Three of the Second Amended Complaint, Plaintiff alleged that he is disabled and that Defendant discriminated against him because of his disability through disparate treatment. (CV 17-02647 Doc. 26 at 11-12.) In Count Three of his proposed third amended complaint, Plaintiff again alleges that he is disabled and Defendant discriminated against him because of his disability through disparate treatment. (Doc. 69, Ex. A at ¶¶ 89-93.) He does not allege that Defendant perceived him as disabled or regarded him as disabled. Instead, he asserts that Defendant perceived that Plaintiff's disability would substantially limit his ability to perform his work. (*Id.*) These allegations in the proposed third amended complaint do not substantially alter his disparate treatment claim in the Second Amended Complaint, and do not provide an additional basis for Plaintiff to assert a clam against Defendant.

Even if the Court construed Plaintiff's proposed "perceived disability discrimination" claim as alleging that Defendant perceived Plaintiff as disabled, or regarded Plaintiff as disabled, this claim would simply allege an alternative basis to establish that Plaintiff is disabled under the ADA. *See* 42 U.S.C. § 12101(1).[6] This duplicative claim would depend on the same alleged conduct and, if proven, would provide the same remedies as Plaintiff's disparate treatment claim. Therefore, it would be futile for the Court to allow Plaintiff to amend his complaint to assert a duplicative disability discrimination claim.

///

///

---

[6] Section 12101(1) of the ADA defines "disability," for an individual, as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1)(A)-(C). The ADA further provides that "[a]n individual meets the requirements of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id*. at § 12101((3)(A). Thus, the statute provides that a person may establish disability by showing that he or she has a physical or mental impairment that substantially limits a major life activity, or is regarded as having such an impairment. Thus, the statute provides alternative bases for a person to establish disability under the ADA.

### 3. Negligence

Finally, in Count Four of the proposed third amended complaint, Plaintiff asserts a claim for negligence.  (Doc. 69, Ex. A at ¶¶ 94-101.)  Plaintiff alleges that Defendant FFN (1) negligently perceived Plaintiff as disabled, (2) negligently subjected him to disparate treatment by denying leave requests, failing to remedy his computer issues, and using derogatory comments, which were adverse employment actions that forced him to resign, (3) negligently monitored supervisors who failed to resolve issues that prevented Plaintiff from doing his job, (4) negligently gave Plaintiff a write-up for a statement to a client, and (5) negligently failed to advise Plaintiff's supervisors of his FMLA leave.  (*Id*.)  Plaintiff asserts that as a result of Defendant's negligence he suffered lost income and benefits, mental anguish, emotional distress, and embarrassment.  (*Id*. at ¶ 101.)  Thus, Plaintiff seeks to assert state law negligence claims based on the same facts he alleged to support his ADA claims for disparate treatment, discrimination, retaliation, failure to accommodate, and wrongful discharge.

However, as set forth above in Section III.C.1, Plaintiff has filed a workers' compensation claim for emotional distress with the Arizona Industrial Commission against his employer FFN based on the same alleged conduct that he asserts in the third amended complaint.  (Doc. 69 at 5.)  Plaintiff's workers' compensation claim is the exclusive remedy for his negligence claims against employer.  *See Wagner,* 393 P.3d at 158; *Lee*, 347 P.3d at 1161.  Therefore, Plaintiff's negligence claims against Defendant FFN, if allowed, would be barred under Arizona law.  Therefore, it would be futile to allow Plaintiff to amend his complaint to assert a state law negligence claim.

## IV.   Plaintiff's Fourth Request to File Third Amended Complaint

On March 19, 2018, Plaintiff filed a fourth motion seeking leave to amend the Second Amended Complaint.  (Doc. 92.)  Plaintiff states that he is "simply adding to his previous amended complaint which has not been ruled on yet."  (*Id*.)  Therefore, it appears that Plaintiff intends the fourth motion to amend as an addendum to his third motion to amend the Second Amended Complaint.  Apparently, Plaintiff is arguing that

the Court should allow him to add additional claims to his proposed third amended complaint. Plaintiff states he has "new evidence . . . regarding fraud" and he asks to include additional claims for "concealment, negligent misrepresentation, intentional misrepresentation and false promise." (*Id.*)

As an initial matter, Plaintiff's fourth motion to amend does not include a copy of the proposed amended pleading and, therefore, does not comply with LRCiv 15.1. As the Court has explained to Plaintiff in two prior orders (Doc. 62, *amended by* Doc. 63; Doc. 68), Rule 15.1 states that:

> A party who moves for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respects it differs from the pleading which it amends, <u>by bracketing or striking through the text to be deleted and underlining the text to be added</u>. The proposed pleading must not incorporate by reference any part of the preceding pleading, including exhibits.

LRCiv 15.1(a) (emphasis added). Because Plaintiff has not attached a proposed amended pleading to his fourth motion to amend, he has not provided any information about the proposed pleading or how it will differ from the pleading it seeks to amend. Therefore, the Court denies Plaintiff's fourth motion to amend for failure to comply with Rule 15.1.

Furthermore, Plaintiff's one-paragraph motion does not include any factual or other allegations to state the additional claims he proposes to add to the operative complaint. Instead, Plaintiff simply lists his proposed additional claims. Plaintiff's one or two word descriptions of his proposed claims are not sufficient to state a claim and would not survive a Rule 12(b)(6) motion to dismiss. Therefore, allowing such amendment would be futile and the Court denies Plaintiff's fourth motion to amend on this basis as well.

## V. Conclusion

Plaintiff's proposed third amended complaint, if allowed, would be subject to dismissal under Rule 12(b)(6) and, therefore, it would be futile for Plaintiff to file this proposed complaint.

Accordingly,

**IT IS ORDERED** that Plaintiff's third and fourth motions seeking leave to file a third amended complaint in these consolidated cases (Docs. 69, 92) are **DENIED.**

Dated this 25th day of June, 2018.

Bridget S. Bade
United States Magistrate Judge